IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MERIX PHARMACEUTICAL CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 5871 |
| v. | ) ) | |
| EMS ACQUISITION CORPORATION, | ) ) | HONORABLE DAVID H. COAR |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

This diversity suit arises from EMS's allegedly botched manufacture of placebo for use in a clinical trial of Merix's over-the-counter cold-sore remedy Releev. Merix has filed a state-law suit against EMS for breach of contract, breach of the parties' confidentiality agreement, and negligence. EMS has moved to dismiss the entire case for lack of personal jurisdiction and for improper venue, *see* Fed. R. Civ. P. 12(b)(2), 12(b)(3), and to dismiss Count I of the second amended complaint for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6). Alternatively, EMS has moved to transfer this litigation to the Eastern District of Pennsylvania. *See* 28 U.S.C. § 1404. For the following reasons, EMS's motion is DENIED in its entirety.[1]

## FACTS

The relevant factual allegations in the complaint, which the court must accept as true for present purposes, are as follows: Merix, a pharmaceutical company located and incorporated in

---

[1] On January 15, 2010 the court denied Merix's motion to file an enlarged brief in opposition to the present motion. In an apparent attempt to circumvent the court's order, Merix makes excessive use of single spaced block quotations and footnotes in its brief; on any reasonable page layout, Merix's brief would exceed the fifteen-page limit specified in Local Rule 7.1. Since Merix's block quotations and footnotes add no substance to its argument, there is no threat of prejudice to EMS. But Merix is admonished that any subsequent filing that attempts to circumvent Local Rule 7.1—or an order of this court—will be stricken. *See* Local Rule 7.1 ("Any brief or objection that does not comply with this rule shall be filed subject to being stricken by the court.").

Illinois, markets and sells a product called Releev, an over-the-counter topical remedy for cold sores. In 2003, Merix approached EMS, a drug and cosmetic manufacturer located and incorporated in Pennsylvania, about the prospect of producing Releev at EMS's facility in Montgomery County, Pennsylvania. The two companies reached a deal and production of Releev commenced.

On May 29, 2003, Merix and EMS signed a confidential disclosure agreement ("CDA"), which provides that EMS shall not make any unauthorized use or disclosure of Merix's formula for Releev or of any other "confidential" information. The CDA provides, as relevant here:

> The detailed business or other information of Merix and/or Squires [the founder of Merix] to which [EMS] may become privy during the Term of this Agreement . . . constitutes confidential and proprietary information, the disclosure, copying or distribution of which could result in competitive harm to Merix and Squires. [EMS] agrees to maintain the Information in the strictest confidence and agrees not to disclose, modify, duplicate, or distribute the Information, whether orally or in writing, directly or indirectly, in whole or in part, except to those of [EMS's] employees, agents, and subcontractors with a need to know the Information. . .
>
> Merix or Squires may give [EMS] the right to use the Information and/or Intellectual Property solely for the provision of services to, or for the benefit of, Merix and/or Squires pursuant to or in conjunction with this Agreement. [EMS] shall not use or disclose, nor allow any of its employees or agents or subcontractors to use or disclose, any of such Information and/or Intellectual Property without first making sure that appropriate documentation of such permitted use or disclosure under this Agreement has been executed.

In July 2005, Merix authorized EMS to manufacture 200 vials of Releev and 200 vials of an inert placebo for use in a double-blind clinical trial to be conducted by the PRACS Institute, an independent lab in North Dakota. EMS knew that the purpose of the clinical trial was to procure evidence that would be beneficial to Merix in pending litigation involving Releev. Merix told EMS "that its authorization to use Merix's confidential information was contingent upon EMS excluding from the placebo the listed active ingredient benzalkonium chloride ("BKC") and further ensuring that the placebo was inert." In October 2005, EMS produced,

bottled, and shipped the placebo.  Unbeknownst to Merix, as the protocol for the clinical trial required Merix to remain blinded throughout, the placebo was not inert—it contained BKC.  As a result, Merix was forced to run a second clinical trial using product it procured from a different manufacturer, incurring substantial further expenses in its ongoing litigation in addition to the cost of the second clinical trial itself.

Merix eventually filed suit in this court, alleging breach of contract and negligence.  In response to Merix's original and first amended complaints, EMS moved to dismiss for lack of personal jurisdiction and for improper venue, or in the alternative, to transfer venue to the Eastern District of Pennsylvania.  Along with its memoranda supporting these motions, EMS submitted exhibits that revealed the still-confidential product formula and step-by-step manufacturing instructions for Releev.  The first of these documents was submitted through the court's CM/ECF docketing system on November 9, 2009; the second was submitted on November 13, 2009.  On November 24, 2009, Judge Keys directed the Clerk of Court to remove the documents from the public record and to file them under seal.  Judge Keys then granted Merix leave to file its second amended complaint, in which Merix added a claim for breach of the CDA (Count I).

The CDA contains a forum-selection clause, which provides that "[t]his Agreement . . . shall be governed by the laws (except choice of laws provisions) of the State of Illinois, U.S.A., to the courts of which, state and Federal, the parties hereto hereby submit to personal jurisdiction and venue for purposes of enforcing the terms hereof."

The parties supplemented the CDA in a series of emails, and in 2005, they entered into a global operating agreement, which further memorialized their prior years of operating practices.

## ANALYSIS

As a preliminary matter, EMS's motion—as well as the substance of its accompanying arguments—invites the court to decide the issues presented in a patently impermissible sequence. EMS contends that Count I of the second amended complaint is a "transparent attempt to create personal jurisdiction where none exists;" specifically, Merix "fabricate[d] a claim" for breach of the CDA "in an effort to rely on the forum selection clause contained in the CDA." Thus, EMS *first* seeks dismissal of Count I for failure to state a claim—or otherwise to have the court ignore the CDA's forum-selection clause in its personal-jurisdiction and forum analyses.

This court does not speculate about a plaintiff's motives for amending its complaint, and those motives are, in any event, immaterial to the viability of a plaintiff's claim. Merix's claim for breach of the CDA will stand or fall on its own, and the court will take up that question at the appropriate juncture. But the court may not reach the merits of a claim until the jurisdictional matters have been settled. *See In re LimitNone, LLC*, 551 F.3d 572, 576 (7th Cir. 2008). The court therefore declines EMS's repeated invitations to put the cart before the horse and instead takes up EMS's motions in the usual order: jurisdiction, venue, merits.

*Personal Jurisdiction and Proper Venue*

To defeat EMS's motion to dismiss under Fed. R. Civ. P. 12(b)(2), Merix must establish a prima facie case of personal jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The court must accept the allegations in the complaint as true "unless controverted by the defendants' affidavits," and "any conflicts in the affidavits are to be resolved in [Merix's] favor." *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987).

There are two potential bases for personal jurisdiction over EMS. The first is EMS's own express consent. *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1290 (7th Cir.

1989) (commercial parties frequently "stipulate in advance to submit their controversies for resolution within a particular jurisdiction") (quoting *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315-16 (1964))). The CDA provides that the parties "submit to personal jurisdiction and venue" in Illinois for the purpose of enforcing the terms of the CDA. On its face, the CDA is narrowly drafted; it appears to govern only suits "for purposes of enforcing the terms" of the CDA itself, rather than all suits "arising from" or "in connection with" or "relating to" it. *See, e.g.*, *Abbot Labs v. Takeda Pharm. Co.*, 476 F.3d 421, 424 (7th Cir. 2004); *Omron Healthcare, Inc. v. Maclaren Exps. Ltd.*, 28 F.3d 600, 603 (7th Cir. 1994). The parties have not addressed the precise scope of the forum-selection clause in the jurisdictional context except in some passing remarks. But as far as personal jurisdiction is concerned, the clause turns out to be superfluous: EMS's ongoing relationship with Merix has afforded it enough contact with Illinois to underwrite specific jurisdiction in this case, whether the clause is read broadly, narrowly, or ignored altogether. Put differently, there is no need for jurisdiction to be "manufacture[d]" in the first place. The court therefore turns to a minimum-contacts analysis and rests its decision as to personal jurisdiction on that basis.

This court has personal jurisdiction over EMS only if an Illinois state court would have jurisdiction. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 779 (7th Cir. 2003). The Illinois long-arm statute grants specific jurisdiction in several enumerated instances. *See* 735 ILCS § 5/2-209(a)(1), (7) (including the "transaction of any business" within the state or the "making or performance of any contract or promise substantially connected" with the state). It also contains a "catch-all" provision permitting a court to "exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." *Id.* § 2-209(c). For all practical purposes, the constitutions of Illinois and the

United States impose the same due-process limits on a court's exercise of personal jurisdiction. *See Citadel Group, Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). Thus, the court will have specific jurisdiction under the Illinois long-arm statute if EMS has purposely established enough "minimum contacts" within Illinois so that subjecting it to an Illinois suit that arises out of those contacts would be fundamentally fair. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

The Supreme Court has repeatedly instructed that fairness is a matter of foreseeability: jurisdiction is fair where, but only where, the defendant could have anticipated being haled into court, with respect to the matter at issue, on account of its own activities. *Id.* at 474. Where an out-of-state defendant's relevant contact with the forum is a contract with an in-state plaintiff, courts must adopt a "highly realistic" approach that places the contract in the context of the entire transaction between the parties. *Id.* at 479. The mere existence of such a contract is not enough to establish personal jurisdiction. *Id.* at 478. Rather, the court must take into account prior negotiations and contemplated future consequences, the terms of the contract, and the parties course of actual dealing with each other. *Id.* at 479.

Applying the guidelines of *Burger King*, the court concludes that specific jurisdiction over EMS comports with due process. The parties course of actual dealing is the determinative factor: Given the nature and extent of its dealings with Merix, EMS could and should have anticipated being called to account in an Illinois court for an alleged breach of its agreements with Merix. EMS entered into a three-year commercial relationship with Merix, an Illinois company. In the course of that relationship, EMS produced 750,786 units of Releev for Merix in (at least) seventeen manufacturing runs; produced and sent samples to Merix to be used in clinical trials in Illinois; sent invoices to Illinois for payment; communicated regularly with

Merix in Illinois; ordered manufacturing materials from Merix in Illinois; and solicited additional business from Merix in Illinois. (R.52, Exhs. B-1, B-2, B-3; Exh. B, Decl. Squires ¶¶12(a)-(h).)) This is not a fleeting, attenuated, or unilateral contact; it is a full-blown, bilateral, multi-year commercial relationship with an Illinois corporation.

The court is mindful, however, that "specific jurisdiction is not appropriate merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) (quotation marks and citation omitted). Thus, as EMS points out, "in a breach of contract case, it is only the dealings between the parties in regard to the disputed contract that are relevant to the minimum contacts analysis." *Id.* (quotation marks and citations omitted).

But EMS takes too narrow a view of the "in regard to" or "arising out of" requirement. As the Seventh Circuit explained in *RAR*, this requirement does not render all past dealings between the parties irrelevant to a dispute arising from a subsequent contract; a "past course of dealing between two parties" that demonstrates a "continuing relationship or obligation between them" is relevant to the minimum-contacts analysis in a breach-of-contract dispute if it "bear[s] on the substantive legal dispute between the parties or inform[s] the court regarding the economic substance of the contract." *Id.* at 1277 (citing and discussing *Heritage House Rests., Inc. v. Continental Funding Group, Inc.*, 906 F.2d 276 (7th Cir. 1990)). Thus, the relevance of prior dealings must be "considered in light of the similarities between the disputed transaction and prior transactions." *RAR*, 107 F.3d at 1279. In *Heritage House Rests.*, for instance, the parties' prior transactions supported specific jurisdiction over a subsequent, disputed transaction because all the transactions involved exchange of the same financial services. *See* 906 F.2d at

278-79. "[S]trong similarities between transactions immediately suggest the substantive relevance of the past transactions. Not only might a later transaction incorporate understandings formed during prior transactions, but a suit regarding the later transaction might actually hinge on those prior understandings." *RAR*, 107 F.3d at 1279. Here, the prior transactions between EMS and Merix involved the manufacture of the same product; EMS had even previously manufactured samples of Releev specifically for clinical trials, a number of which were to take place in Illinois. In sum, then, the prior dealings between EMS and Merix formed more than just a "general relationship between the parties" with no specific relevance to the dispute in this case; they formed an ongoing arrangement specifically for the manufacture and sale of the very product—sometimes, for the very purposes—from which the disputes in this case arise. EMS's contention that "Illinois is simply not relevant" because the product in dispute was manufactured in Pennsylvania and the clinical trial was run in North Dakota therefore fails.[2]

Since EMS is subject to personal jurisdiction in Illinois, its motion to dismiss for lack of proper venue under Rule 12(b)(3) also fails. In a diversity suit, venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same state." 28 U.S.C. § 1391(a)(1). For purposes of venue under § 1391, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *Id.* § 1391(c). The Northern District of Illinois is a proper venue.

### *Transfer of Venue*

In the alternative, EMS moves to transfer venue to the Eastern District of Pennsylvania. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer a case to any other district or division where it might have been brought." 28 U.S.C.

---

[2] Because the court has specific jurisdiction, which suffices for resolving all the claims in this case, it is unnecessary to decide whether Illinois would have general jurisdiction over EMS.

§ 1404(a). It is the movant's burden to show, "by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).

The propriety of transfer is a case-by-case assessment, and it is committed to the sound discretion of the trial judge. *Id.* at 219. The court considers convenience (or "private interest") factors, including: (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses. *Methode Elecs., Inc. v. Delphi Auto. Sys., LLC*, 639 F. Supp. 2d 903, 907 (N.D. Il. 2009) (Coar, J.). The court also considers the interests of justice (or "public interest factors"), which relate to the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in [a particular] locale. *Id.* (quotation marks and citation omitted). "There often may be multiple proper venues, although one, on the basis of a forum-selection clause or for other reasons, may be superior to the rest." *LimitNone,* 551 F.3d at 575.

Merix does not argue that the Eastern District of Pennsylvania would be an improper forum. And EMS's challenge to venue in this district is based almost entirely on private-interest factors. With respect to public-interest factors, EMS argues only that Pennsylvania has a strong interest in protecting its citizens, while Illinois has no legitimate connection to this dispute in the first place. EMS's second premise is mistaken for the reasons already given in connection with the issue of personal jurisdiction. For those reasons, Illinois has a commensurate interest in affording remedies to its own citizens. *See Heritage House Rests.,* 906 F.2d at 284 ("Illinois has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries

inflicted by out-of-state actors." (quoting *McGee v. Int'l Life Ins., Co.*, 355 U.S. 220, 223 (1957))). The public-interest considerations are therefore in equipoise.

Accordingly, the court focuses on the private-interest factors identified by the parties: the forum-selection clause, Merix's choice of forum, the location of material events, and the convenience of parties and witnesses. "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed," *In re Nat'l Presto Indus.*, 347 F.3d 662, 664 (7th Cir. 2003), especially where the chosen forum is also the plaintiff's home forum. *Lyons v. Ill. Cent. R.R. Co.*, 2009 U.S. Dist. LEXIS 118141, at *3 (N.D. Il. Dec. 18, 2009) (Gettleman, J.). EMS has not shown that Merix's choice of forum should be disturbed.

A forum-selection clause in a contract should be enforced unless it would be unjust or unreasonable under the circumstances. *See Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375-76 (7th Cir. 1990); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). On a motion to transfer venue, a forum-selection clause is relevant as a matter of convenience and as an interest of justice; it is "a significant factor that figures centrally in the district court's calculus." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988). Still, the transfer analysis remains "flexible and multifaceted;" a forum-selection clause, like any other relevant factor, "should receive neither dispositive consideration nor no consideration." *Id.* at 31.

Here, the effect of the forum-selection clause in the CDA is attenuated by the narrow scope of its language. EMS did not broadly consent to suit in Illinois for any dispute that might arise between the parties; it consented only to a suit to enforce the terms of the CDA. Thus, the forum-selection clause directly applies only to Count I of the complaint; Merix's claims for breach of contract and negligence arising out of the allegedly botched manufacture of placebo are outside the scope of the clause.

However, that does not exhaust the effect of the forum-selection clause. "The signing of a valid forum selection clause is a waiver of the right to move for a change of venue [from the selected forum] on the grounds of inconvenience to the moving party." *Northwestern Nat'l*, 916 F.2d at 378; *see also Heller Fin., Inc.*, 883 F.3d at 1293. Having consented to suit in Illinois as a potential cost of doing business with Merix, EMS may not now complain that it would be inconvenient for it to defend such a suit. Moreover, EMS does not identify any third-party witnesses who would be inconvenienced by a suit in Illinois; it alleges only that "those who carried out the work," along with the "documents, materials, and equipment used to produce the North Dakota Clinical Trial samples are all located in Pennsylvania." EMS's own employees are not third-party witnesses, so this argument just reiterates the claim that facing suit in Illinois will be inconvenient for EMS—but that argument is foreclosed by the presence of the forum-selection clause.

The only remaining factor is the location of the material events giving rise to this litigation. Three forum states are implicated. EMS manufactured the disputed placebo in Pennsylvania. As EMS points out, the clinical trial—the location at which the alleged breach became complete—took place in North Dakota. The alleged disclosure of confidential information that underlies Merix's claim for breach of the CDA happened not only in Illinois but in this very court. That hardly adds up to enough concentration of material events in a single forum to outweigh both a plaintiff's choice of a forum and a defendant's consent to suit in that chosen forum. EMS's motion to transfer venue must therefore be denied.

*Count I: Breach of the CDA*

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "describe the claim in sufficient detail to give the defendant 'fair notice of what the claim is and

the grounds upon which it rests'" and "plausibly suggest that the defendant has a right to relief, raising that possibility above a 'speculative level.'" *EEOC v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)). If a plaintiff relies merely on conclusions, labels, or formulaic recitations of the elements of a cause of action, a Rule 12(b)(6) motion should be granted. *Id.* at 570. Where a plaintiff submits copies of contracts and other documents referenced in its complaint, the court also may consider those documents. *Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005).

In Count I, Merix alleges that EMS breached the CDA. To state a claim for breach of contract under Illinois law, Merix must allege "the existence of contract, the performance of its conditions by the plaintiff, a breach by the defendant, and damages as a result of the breach." *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 226 (Ill. App. Ct. 2007) (citation omitted).

*First*, Merix contends that EMS "used" the confidential Releev formula without authorization when it manufactured placebo containing Releev's active ingredient. This requires an impossibly strained interpretation of the CDA. The CDA is clearly intended to prevent "competitive harm" to Merix by unauthorized use or disclosure of its formula for Releev, but as the complaint alleges, "Merix authorized EMS to use Merix' [*sic*] confidential information to produce two formulations for a double-blind clinical trial that included 200 vials each of the Releev formulation and of an inert placebo . . . ." According to the complaint, EMS botched the placebo and thus failed to deliver conforming goods, precisely as Merix alleges in Counts II and III. However, EMS's delivery of non-conforming placebo cannot be reasonably construed as an unauthorized use of confidential information, as contemplated by the CDA, for something other than "the provision of services to, or for the benefit of, Merix and/or Squires." Nor does Merix

allege that by delivering non-conforming placebo to the lab, EMS caused an unauthorized disclosure of confidential information. Merix's allegation that EMS improperly manufactured placebo states a claim for breach of the underlying contract of sale. As for its claim that EMS breached the CDA, however, Merix pleads itself out of court by admitting that it authorized the manufacture of the goods in question, albeit to specifications that EMS allegedly failed to meet.

*Second*, Merix contends that EMS breached the non-disclosure provision of the CDA by including confidential information—the formula and step-by-step manufacturing instructions for Releev—in the exhibits appended to EMS's motions to dismiss the original and first amended complaints. This states a claim for breach of the CDA. Filing court papers that disclose information subject to a confidentiality agreement between the parties may support a damages claim for breach of contract. *See Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000); *Mapquest, Inc. v. CIVIX-DDI, LLC*, 2009 U.S. Dist. LEXIS 10670, at *19-23 (N.D. Il. Feb. 11, 2009) (Coar, J.). Merix alleges that EMS filed the documents in question on the court's publicly accessible CM/ECF docketing system on November 13 and November 24, 2009, respectively; they remained on CM/ECF until Magistrate Judge Keys ordered them removed and filed under seal on November 24, 2009. Accordingly, Merix alleges that EMS caused information protected by the CDA to become a matter of public record, and that these disclosures "have caused substantial injury to Merix for which Merix will seek damages . . . ."

In response, EMS first argues that Merix has not adequately alleged its own performance of the conditions of the contract, namely, that Merix safeguarded the confidentiality of the information in question and kept it from becoming publicly available before EMS filed its motions to dismiss. This argument fails: Merix clearly alleges that the information in question was confidential at the time EMS disclosed it. EMS further attempts to dispute the factual merit

of this allegation, but that is not a matter to be taken up on a motion to dismiss.[3]

Next, EMS argues that Merix has not adequately alleged damages because its claim of "substantial injury" is "conclusory" and implausible. EMS points out that its disclosure would harm Merix only if one or more of Merix's competitors actually logged onto CM/ECF and retrieved EMS's filings before Judge Keys ordered them removed. Since this is just "'what if' speculation, and does not establish competitive harm," Merix could not have suffered any more than "a trivial inconvenience," and its *de minimis* claim should be dismissed.

This argument, too, is a premature attack on the factual merits of Merix's claim. A complaint need only allege damages; its failure to "establish" them is no basis for dismissal. And neither is a defendant's self-serving and *ex ante* conclusion that the plaintiff will be unable to prove damages when the burden of doing so arrives in due course. EMS's motion to dismiss Count I for failure to state a claim is therefore denied.

## **CONCLUSION**

For the foregoing reasons, EMS' motion to dismiss or to transfer venue is DENIED in its entirety.

Enter:

/s/ David H. Coar

_____

David H. Coar

United States District Judge

**Dated: February 4, 2010**

---

[3] Even if it were, EMS's bald reference to an FDA report would hardly suffice to establish that *all* of the information contained in EMS's submissions had already become publicly available. Despite what EMS says in its brief, Merix alleges more (in ¶20 of the complaint) than just that BKC and Echinacea were revealed as active ingredients. Time will tell whether the facts support Merix's allegations.