**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MERIX PHARMACEUTICAL CORPORATION,** | ) ) | |
| | ) | **No. 09 C 5871** |
| **Plaintiff,** | ) ) | |
| | ) | **Judge David H. Coar** |
| | ) | |
| | ) | **Magistrate Judge Young B. Kim** |
| **v.** | ) | |
| | ) | |
| **EMS ACQUISITION CORPORATION,** | ) | |
| **Defendant.** | ) | |

**MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RESPONSIVE TO
PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION**

Plaintiff, Merix Pharmaceutical Corporation ("Merix"), through its undersigned counsel, moves this Honorable Court for an Order compelling Defendant, EMS Acquisition Corporation ("EMS"), to produce for inspection and copying, at the office of Plaintiff's counsel, documents responsive to *Plaintiff's Third Set Of Requests For Production (Nos. 71-87)* previously served upon EMS pursuant to Rule 34, Federal Rules of Civil Procedure; and in support thereof, would show as follows:

On July 30, 2010, Plaintiff electronically served upon all Defendant's counsel of record, *Plaintiff's Third Set of Requests For Production* (Nos. 71-87) ("Plaintiff's Third Set").

Even though EMS' responses thereto were due on August 30, 2010, EMS failed to timely serve any responses by that deadline. Instead, a day later, EMS served upon Plaintiff a completely deficient and wholly unresponsive set of responses in which it simply copied and then reasserts *the same identical objections to each and every request*, essentially stonewalling and refusing to produce any responsive documents whatsoever.

1

That EMS was acting in bad faith throughout its responses is perhaps best exemplified by the fact that every single response is copied verbatim from the very first one, to the point that all of the responses include an objection to producing "tax returns" when the only request specifically seeking production thereof was the very first one in the set (Request 71). A copy of *EMS Acquisition Corporation's Responses And Objections To Plaintiff's Third Set Of Requests For Production (Nos. 71-87)* ("EMS 3rd Responses") is attached hereto as Exhibit "A".

As just one example of particular note is Plaintiff's document Request 84, in which Plaintiff seeks:

> "For the period from June 1, 2004 through the present, documents sufficient to establish **all compensations, remuneration and other monetary and non-monetary benefits paid or provided to the following individuals at any time by GSK or by any other person or entity purporting to act on GSK's behalf**: Stacie Kirsch; Nguyen Bang (however spelled correctly); John Meenan (however spelled correctly); Bujor Burlacu." (emphasis added)

As this Court is well aware, Plaintiff has sought some plausible explanation for EMS making such an obvious error of including in the placebo the *only* listed active ingredient on the Releev product label, and has suspected that GSK may have had some influence in that regard. In fact, this Court has previously granted Plaintiff's Motion To Compel [Docket # 140] that EMS produce related documents responsive to Requests 31-36 [Minute Order, Docket # 151] so as to investigate that connection which Plaintiff had already found some evidence of on the Internet. Remarkably, EMS saw fit to give the same identical response as for all of its others, including:

> "EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. … Said request is also objected to as oppressive and annoying."

It is clear the objections asserted by EMS to this Request were made in bad faith. Plaintiff also notes that there is no legal justification for an objection that a request is allegedly "annoying".

In further investigation of EMS' potential connections with GSK, and also in further investigation of the key telephone conversations which Plaintiff has alleged occurred between Plaintiff and Stacie Kirsch (and which Ms. Kirsch has denied), Request 86 seeks:

> "From June 1, 2004 through the present, all **telephone bills and records relating thereto for each telephone line and number that EMS has or had during the referenced period**, including but not limited to land lines and any cell phones which EMS ever paid the bills for at any time during the referenced period, even if later reimbursed therefor by any other party; in particular, but not by way of limitation, the cell phone(s) should include any and all such cell phones which Stacie Kirsch ever used or had access to at any time during the referenced period."

Again, EMS in bad faith interposed the same identical objection, to wit:

> "EMS objects to this Request insofar as any of the **financial documents listed** are not related to the discovery of any material issue in this lawsuit. Further, **EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit**. … Said request is also objected to as oppressive and annoying." (emphasis added)

No "tax returns" are sought by this request, and the documents are clearly relevant to the issues raised. It is apparent that, in order to cause Plaintiff the extra work and expense of having to move this Court to compel its compliance with legitimate discovery, EMS did nothing more than just list the same stonewalling response to each and every one of the document requests contained in Plaintiff's Third Set.  Plaintiff was entitled to fully responsive discovery responses without having to incur the expenditure of time, resources and money to chase EMS to Court.

For instance, EMS knows full well that Plaintiff was granted leave to file its Fourth Amended Complaint, *specifically* to include claims for fraud against EMS and seeking punitive damages therefor, which also thereby includes an entitlement of Plaintiff to seek discovery of documents related to EMS' financial condition. [See: Requests 71-85] EMS' counsel has repeatedly stated, during hearings herein, that the amount of damages being sought will allegedly "bankrupt his client", an argument he apparently intends to make to the jury at trial.

Plaintiff is entitled to explore the legitimate bounds of EMS' financial condition and capabilities, and whether it has been siphoning off its assets to the benefit of its officers and owners in order to avoid recovery thereof by Plaintiff herein.

Even without its claim for punitive damages, Plaintiff's theory of financial incentives being provided by GSK (for EMS to put the active ingredient BKC in the placebo) is a legitimate area of inquiry and investigation which would also and independently entitled Plaintiff to look into EMS' financial condition and operations, and for any unusual transactions or changes thereto. [See: Requests 71-85, and in particular 72, 76, 81-85] Amounts paid to EMS' management employees and to its shareholders, and for what reasons, and even the identification of those shareholders, are also legitimate areas of inquiry when suspicious and potentially intentional behavior is at issue. [See: Requests 76-81, 83-85]

Plaintiff seeks no type of financial information that EMS has not already sought from Plaintiff, and which Plaintiff produced without hesitation (other than seeking an appropriate modification of the existing Protective Order to protect against misuse or disclosure thereof). In fact, although Plaintiff placed many narrowing time-limitations upon its requests that were not present in those propounded to it by EMS, EMS apparently recognized the similarity in the requests and, in an effort to further save time by copying the requests themselves on a wholesale basis, accidentally included the word "Merix" instead of "EMS" when re-typing Plaintiff's Third Set and responding thereto. [See:  EMS 3rd Responses, numbers 81 & 82, erroneously substituting "Merix" therein for the name "EMS" which was properly in Plaintiff's Third Set]  EMS then repeatedly included in every one of its responses the statement:

> "Further, for a placebo that Merix paid $250.00 to make, Merix has now made another
> request for documents well in excess of that which is reasonable."

However, the amount of damages which EMS *caused* Plaintiff to suffer and incur, which came to well over Ten Million Dollars, and the resulting amount of punitive damages which EMS should be required to pay, are the more pertinent issues when assessing the reasonable extent of legitimate discovery.

Finally, Plaintiff has sought highly relevant documents in its Request 87, to wit:

"The original manufacturing instructions provided by Merix to EMS for or related to the product [EMS mistakenly re-typed it as "project"] Releev, the original master record created at EMS based thereon, all subsequent versions thereof, and all client authorizations for any changes made thereto."

In response, EMS made a similarly cryptic objection and blanket refusal to produce responsive documents, as follows:

"EMS objects to this Request insofar as the manufacturing instructions related to the "project Releev" have nothing to do with whether or not EMS produced a placebo as requested and approved by Merix. Accordingly, the information sought is not reasonably calculated to lead to the discovery of admissible evidence. Further, the request is objected to insofar as Merix has equal access to this information."

As a cGMP FDA regulated manufacturer, EMS is *required* to maintain complete master records of the manufacturing instructions for the products it makes, along with documentation of any and all changes made thereto and the reasons therefor. There have been serious questions raised about the motivations and reasons for EMS making several unauthorized and unexplained changes to the manufacturing instructions for Plaintiff's *product* Releev. Further serious questions have been raised regarding what the purpose was for the trip taken by Merix' CEO to EMS facilities in September 2005. Merix went to EMS to investigate and try to correct the problems which EMS was repeatedly having when making the Releev *product*, and indeed determined that its manufacturing instructions had been unilaterally changed and were not being followed at EMS. In contrast, and despite numerous documents to the contrary, EMS now claims that Merix allegedly travelled to EMS just to witness and approve its placebo.

Merix is entitled to investigate any and all changes made to its manufacturing instructions, and the documentation thereof, to support its version of what transpired before, during and after the September 2005 trip to EMS. Contrary to EMS' representations in its response, Merix does not have equal access to those responsive documents that are in EMS' possession.

WHEREFORE, it is respectfully submitted that each of EMS' duplicated identical responses to Requests 71 through 86, and its response to the remaining Request 87, were *all* made in bad faith and in an apparent effort to just stonewall legitimate discovery and cause Plaintiff to incur the expenditure of time, resources and money of having to move this Court to compel compliance with legitimate discovery herein. Plaintiff respectfully prays that this Court enter an Order compelling EMS to produce all documents responsive to *Plaintiff's Third Set Of Requests For Production (Nos. 71-87)*, and that Plaintiff be awarded its attorney fees and related costs as sanctions for having to file this Motion and attend the hearing hereon.

Dated: September 2, 2010                    Respectfully submitted,

                                            MERIX PHARMACEUTICAL CORPORATION


                                       By:   **/s/ Richard Kirk Cannon**
                                            Richard Kirk Cannon
                                            Law Offices of Cannon & Associates
                                            117 S. Cook St., #361
                                            Barrington, IL 60010-4311
                                            (847) 381-1600

        ***Attorney for Plaintiff Merix Pharmaceutical Corporation***

## CERTIFICATE OF SERVICE

I, Richard Kirk Cannon, caused to be served a copy of the foregoing:

MOTION TO COMPEL
PRODUCTION OF DOCUMENTS RESPONSIVE TO
PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION

by filing same with the Clerk of the Court on this date, Thursday, September 2, 2010, using the

CM/ECF system which will send electronic notification of such filing to the following counsel

of record:

Lawrence C. Rubin
Erin K. Lynch
SHEFSKY & FROELICH LTD.
111 E. Wacker Drive, Suite 2800
Chicago, IL 60601


Ronald L. Williams
Dean R. Batson
FOX ROTHSCHILD LLP
Eagleview Corporate Center
747 Constitution Drive, Suite 100
P.O. Box 673
Exton, PA 19341

*Attorneys for EMS Acquisition Corporation*


   **/s/ Richard Kirk Cannon**
Richard Kirk Cannon

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERIX PHARMACEUTICAL
CORPORATION,

        Plaintiff,

        v.

EMS ACQUISITION CORPORATION,

        Defendant.

Case No. 09 C 05871

Hon. David H. Coar

## EMS ACQUISITION CORPORATION'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION (NOS. 71-87)

Defendant EMS Acquisition Corporation ("EMS"), by and through its undersigned

counsel, provides its responses and objections to Merix Pharmaceutical Corporation's ("Merix")

Third Set of Requests for Production (Nos. 71-87) as set forth below. The investigation

continues and EMS will supplement these responses as required by Rule 26(e). EMS

incorporates all of its responses and objections previously made to the First and Second Sets of

Requests as though set forth more fully herein.

## RESPONSES AND OBJECTIONS TO
## REQUESTS TO INSPECT AND COPY ELECTRONIC DEVICES

71.    All tax returns filed by EMS, including all worksheets, correspondence, drafts and supporting documentation relating thereto, for periods (or portions thereof) including June 1, 2004 through the present.

**RESPONSE: EMS objects to this Request insofar as any of the tax returns filed by EMS are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

72.    All financial statements prepared by or on behalf of EMS during the past two years, including:

      a.  Monthly, quarterly and annual financial statements;

      b.  Balance sheets;

      c.  Trial balances;

      d.  Interim financial reports;

      e.  EMS' budgets, projections, and forecasts;

      f.  Weekly, monthly and/or quarterly reports that were created, generated, or maintained by any management information system, including any computer-generated reports of sales, revenues, contractual adjustments, expenses, operating costs, gross margins, operating margins, cash flows, working capital or debt levels, or capitalization of intangible assets of any kind;

      g.  All documents that refer to, relate to, or concern EMS' gross profits or operating profit margins;

      h.  All documents that refer to, relate to, or concern EMS' revenue recognition policy(ies);

      i.  All documents that refer to, relate to, or concern EMS' accounting practices and/or policies;

      j.  All documents that refer to, relate to, or concern EMS' calculations of reserves, goodwill and/or in process research and development costs; and

      k.  All documents that discuss, explain, summarize or analyze EMS' financial condition.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

73.    All documents generated within the past two years that refer to, relate to, or concern any proposed actual, projected or forecasted financial performance, financial condition, revenues, income, profits, losses, sales, surplus, earnings per share, or charges against earnings related to EMS, including but not limited to EMS' financial statements or drafts thereof, budgets, forecasts, business plans, operating plans or statements, general ledger calculations, accounting

2

work papers or other documents, whether by week, month, quarter or year, whether estimated or actual, and whether prepared by EMS or any other person or entity on EMS' behalf.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

74.     All documents generated within the past two years that refer to, relate to, or concern financial reporting by EMS, including revenue recognition, recording of liabilities and expenses, asset valuation, related-party transactions, barter transactions, research and development arrangements, advertising expenses, obsolete inventory, accounts receivable and internal control.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

75.     All documents provided by or on behalf of EMS, within the past two years, to accountants, auditors, financial advisors, lending institutions, and/or investment banking firms.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

76.     For the period June 1, 2001 through the present, monthly bank statements for any bank account for which EMS is or was an account holder or approved signatory.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely**

3

**benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

77.    From the period from June 1, 2004 through the present, all documents that refer to, relate to, or concern any loans made to EMS, including but not limited to any lines of credit.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

78.    All documents provided to, prepared by or exchanged with potential investors in or for EMS within the past two years.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

79.    For the period from June 1, 2004 through the present, all documents that refer to, relate to, or concern fundraising efforts by EMS or by any other person or entity purporting to act on EMS' behalf.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

80.    For the period from June 1, 2004 through the present, all documents that refer to, relate to, or concern any equity or debt offering(s) by EMS or by any other person or entity purporting to act on EMS' behalf.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably**

4

**calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

81.     Documents sufficient to identify all individuals or entities who invested money in Merix, whether by means of equity or debt at any time from June 1, 2004 through the present.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

82.     For the period from June 1, 2004 through the present, all documents that refer to, relate to, or concern Merix's business operations, including but not limited to the segments of the industry served, the cash necessary for operations, business plans or strategies, manufacturing plans, increases in customer penetration, expansion of retail presence, expansion of product lines, and targets for long-term growth.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

83.     For the period from June 1, 2004 through the present, all documents that refer to, relate to, or concern salaries, benefits, bonuses, or compensation of any kind, which was for any reason paid by EMS or by any other person or entity purporting to act on EMS' behalf, to any person employed by EMS in a management position, including but not limited to:  Stacie Kirsch; Nguyen Bank (however spelled correctly); John Meenan (however spelled correctly); Bujor Burlacu.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now**

5

**made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

84.    For the period from June 1, 2004 through the present, documents sufficient to establish all compensations, remuneration and other monetary and non-monetary benefits paid or provided to the following individuals at any time by GSK or by any other person or entity purporting to act on GSK's behalf: Stacie Kirsch; Nguyen Bang (however spelled correctly); John Meenan (however spelled correctly); Bujor Burlacu.

**RESPONSE: EMS objects to this Request insofar as any of the financial documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

85.    EMS' Certificate of Incorporation, Articles of Incorporation, and By-Laws, including all amendments thereto, minute book for the period from June 1, 2004 through the present, and all documents related thereto.

**RESPONSE: EMS objects to this Request insofar as any of the documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

86.    From June 1, 2004 through the present, all telephone bills and records relating thereto for each telephone line and number that EMS has or had during the referenced period, including but not limited to land lines and any cell phones which EMS ever paid the bills for at any time during the referenced period, even if later reimbursed therefor by any other party; in particular, but not by way of limitation, the cell phone(s) should include any and all such cell phones which Stacie Kirsch ever used or had access to at any time during the referenced period.

**RESPONSE: EMS objects to this Request insofar as any of the documents listed are not related to the discovery of any material issue in this lawsuit. Further, EMS objects to this Request insofar as the tax returns filed by EMS are not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit. Further, EMS objects to this Request insofar as it imposes a burden and expense which outweigh its likely benefit to Merix. Further, for a placebo that Merix paid $250.00 to make, Merix has now made another request for documents well in excess of that which is reasonable. Said request is also objected to as oppressive and annoying.**

6

87.     The original manufacturing instructions provided by Merix to EMS for or related to the project Releev, the original master record created at EMS based thereon, all subsequent versions thereof, and all client authorizations for any changes made thereto.

**RESPONSE: EMS objects to this Request insofar as the manufacturing instructions related to the "project Releev" have nothing to do with whether or not EMS produced a placebo as requested and approved by Merix. Accordingly, the information sought is not reasonably calculated to lead to the discovery of admissible evidence. Further, the request is objected to insofar as Merix has equal access to this information.**

Date: August 30, 2010                    **EMS Acquisition Corporation**


                                         By:  _____
                                              One of Its Attorneys

Ronald L. Williams                       Lawrence C. Rubin (ARDC No. 2413426)
rwilliams@foxrothschild.com              lrubin@shefskylaw.com
Fox Rothschild LLP                       Shefsky & Froelich Ltd.
747 Constitution Drive, Suite 100        111 East Wacker Drive, Suite 2800
P.O. Box 673                             Chicago, Illinois 60601
Exton, PA 19341                          Telephone:     (312) 527-4000
Telephone:     (610) 458-7500            Facsimile:     (312) 527-4011
Facsimile:     (610) 458-7337

EX1 932216v1 08/30/10

## CERTIFICATE OF SERVICE

The undersigned, pursuant to the penalties for perjury, and in accordance with this

Court's rules, does hereby affirm and declare that a true and accurate copy of the foregoing **EMS**

**ACQUISITION CORPORATION'S RESPONSES AND OBJECTIONS TO**

**PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION (NOS. 71-87)**, was

served upon:

> Richard K. Cannon
> Law Offices of Cannon & Associates
> 117 South Cook Street, Suite 361
> Barrington, Illinois 60010-4311
> Telephone:     (847) 381-1600
> Facsimile:     (847) 381-6650
> Email: _rkcannon@cannoniplaw.com_

electronically on August 30, 2010.


_____
Ronald L. Williams

EX1 932216v1 08/30/10