IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MERIX PHARMACEUTICAL CORPORATION, ) ) ) Plaintiff, ) v. ) ) ) ) EMS ACQUISITION CORPORATION, ) Defendant. ) | No. 09 C 5871 Judge David H. Coar Magistrate Judge Young B. Kim |

**REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS RESPONSIVE TO
PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION**

Plaintiff, Merix Pharmaceutical Corporation ("Merix"), through its undersigned counsel, hereby files its *Reply In Support Of Motion To Compel Production of Documents Responsive To Plaintiff's Third Set Of Requests For Production,* and would further show as follows:

Defendant mistakenly attempts to argue the merits of its recently-filed Motion To Dismiss as to Counts V-VII, which include Plaintiff's asserted claim for fraud, while opposing legitimate discovery. Until if and when Judge Coar rules in favor of Defendant's Motion, which is highly doubtful[1], this Court must rule upon the merits of discovery requests based upon the pleadings as they currently stand. Those pleadings presently include a claim against EMS for fraud, which entitles Plaintiff to seek punitive damages and, hence, disclosure of EMS' financial condition.

---

[1] In support of Plaintiff's Motion For Leave To Amend (the Complaint, to include an added claim for fraud), Plaintiff submitted to Judge Coar the proposed amended complaint *along with evidence that, prior to agreeing to manufacture the placebo at issue in this case, EMS had informed and assured Merix of EMS' capabilities and experience with making products and placebos for use in clinical trials*, and also the recent contrary deposition testimony of EMS' president that *EMS in fact had no such prior experience*. Judge Coar apparently felt there was ample justification to permit amendment of the complaint to include the count for fraud as alleged, and so ordered.

1

Even without Plaintiff's claim for fraud, there have been multiple arguments raised by Defendant itself that would justify the discovery now being sought. For instance, EMS has repeatedly argued that the level of business it was doing with Merix (as its exclusive manufacturer) was not so great as to support an overall fiduciary relationship of expected trust and confidence, and further that it would not support the amounts of damages now being sought (instead arguing repeatedly that this matter should only be looked upon in context of just the $250.00 paid for the placebo made for the clinical trial). Plaintiff is entitled to establish otherwise through access to Defendant's financial records. Defendant has even gone so far as to allege that the damages sought herein, if awarded, would bankrupt the Defendant[2]. In fact, Plaintiff believes the requested discovery will uncover evidence that Merix' business made up a substantial portion of the revenues generated by EMS' contract manufacturing division, and that anticipated growth in Merix' volume would have generated enormous profits for EMS, thus supporting Plaintiff's position that the manufacture of product and placebo for Merix was in furtherance of Defendant's overall expectation of millions of dollars in future profits. It is also believed that the requested discovery will uncover evidence of inappropriate compensation being paid to or taken by Defendant's management personnel and/or its shareholders that would negate its arguments about allegedly being bankrupted by the damages being sought herein.

Plaintiff has also theorized that Defendant may have intentionally disrupted Plaintiff's business and ruined its clinical trial, in collusion with or in an effort to please GSK, and that unusual financial transactions (including but not limited to investments made by, and the identities of, all shareholders) would potentially unveil the motivations or rewards for such acts. Plaintiff has uncovered (and produced) publicly-available information that Defendant is and has

---

[2] Plaintiff notes that EMS even argued, in moving to dismiss for lack of jurisdiction, that the amount of revenues derived from Plaintiff was *de minimus* in light of its overall annual sales revenues exceeding $18 Million per year.

*for years* actively participated in and been directly involved at the highest levels of professional organizations at which GSK's senior management have *also* been at the same time in the highest positions of authority. While Defendant has steadfastly denied any such relationships and provided no related documents (until recently), Defendant has just recently produced to Plaintiff email correspondence directly from GSK's senior management to Stacie Kirsch, president of Defendant, addressed to her private "secure" email address.[3]

Plaintiff also notes that GSK's Robert F. Carlton has been for many years the president of the Philadelphia Microscopy Society, which is the local affiliate of the national society for which Stacie Kirsch has for years served as a member of its board. Despite her denials, it defies logic and common sense that Stacie Kirsch did not attend any functions of the local branch of the national professional society which *she has helped to run for the past decade*, or that she had no contact at all with the *president* of its (closest to her company) local affiliate, especially given the proximity to her business operations and the potential for GSK to become a substantial source of business for Defendant. It is further interesting to note that, shortly after Ms. Kirsch was questioned (in deposition) about her acquaintance with Robert Carlton, which she completely denied, internet links to their mutual involvements were taken down or disabled (literally within days). Such immediate and far-reaching impact upon internet sites and related links would require the kind of capabilities and resources that only the most sophisticated organizations (such as the multi-billion dollar behemoth GSK) would have at their disposal. Plaintiff understands that Defendant will likely not give up the proverbial "smoking gun" which outlines any conspiracy or collusion with GSK, and that Plaintiff will instead need to investigate same through more indirect means. The discovery being sought herein is *also* reasonably related thereto.

---

[3] Further such communications will be sought as part of Plaintiff's request for access to EMS' computers.

Telephone records being sought would potentially substantiate each of the matters referenced above, in addition to supporting the testimony of Plaintiff (directly contradicted by Defendant's testimony) that Defendant was in constant communication with Plaintiff and, in particular, that Defendant communicated directly with Plaintiff's president while she was in New Jersey for the litigation with GSK (and was told the *reasons* why Plaintiff was there). Defendant denies being so informed regarding the nature of the GSK false-advertising litigation, or the reasons why Defendant was instructed to destroy tens of thousands of pieces of Plaintiff's packaging which reflected thereon advertising claims being challenged by GSK, or the reasons why Plaintiff was needing to do a clinical trial for its product Releev (i.e. to prove, in the GSK litigation, that Plaintiff's advertising and labeling claims were truthful). Plaintiff is entitled to pursue that discovery through production of the requested telephone records.

Finally, despite literally dozens of documents to the contrary, Defendant has recently fabricated a story that Plaintiff's president, Ms. Squires, not only (allegedly) orally instructed Defendant to just "leave out the herb" while making the placebo at issue, but that she actually travelled to EMS to actively participate in the manufacture of (and approved) that placebo. **Nothing could be further from the truth**. There is <u>not one single document</u> produced to date that would support that recent testimony (which Plaintiff contends was **blatant perjury**). In contrast, there are literally dozens of documents which reflect contemporary communications between EMS and Merix, both before and after the trip, that the whole purpose of Ms. Squires travelling to EMS was to get to the bottom of, and hopefully correct, the many problems which EMS was having in reliably manufacturing the actual product Releev upon which Merix relied for its very survival, and which would also be used in the upcoming PRACS clinical trial.

Documents which reflect the manufacturing instructions provided to EMS by Merix, and any changes thereto which had to be *approved* by Merix (*before* they could be implemented, in accordance with FDA cGMP regulations), are *required* by the FDA to be retained by the manufacturer. Such documents (or the lack thereof at EMS) would, at the very least, establish that EMS was intentionally not following the manufacturing instructions provided by Merix but, instead, had unilaterally made changes thereto without Merix' approval, thus necessitating that Ms. Squires travel to EMS *to correct those problems with the manufacturing of Merix' actual Releev product* (as opposed to going there to make the placebo). Any changes made to the manufacturing instructions on or shortly after Ms. Squires' trip to EMS would further support Plaintiff's position that *the active product Releev* was the subject of her trip to EMS (and *not* the placebo, which Plaintiff denies ever having made or approved while at EMS.) Merix is entitled to discovery of all related documents as requested.

### **Formal Procedure Issue**

Plaintiff acknowledges that there was no attempt made to contact opposing counsel prior to filing this instant Motion. When Plaintiff previously cited the local rule requiring such a "meet and confer" in response to Defendant's recent Motion To Compel, noting that Defendant had made no prior attempt to have such a meeting for the Second and Third Sets of Requests For Production, this Court apparently recognized the likely futility of such efforts and, instead, proceeded with the hearing thereon and invited the parties to bring future discovery disputes to the Court for resolution. If that was a one-time waiver of the referenced local rule, for the Defendant, then Plaintiff stands corrected and will attempt to resolve future discovery disputes informally. Plaintiff respectfully notes that, given Defendant's disingenuous stonewalling responses, the likelihood of its having voluntarily reversed those positions is dubious at best.

**PRAYER FOR RELIEF**

WHEREFORE, based upon the above, Plaintiff is entitled to have each of its Third Set of Requests for Production, Nos. 71 through 87, completely and fully responded to in good faith on the merits, and that Defendant be Ordered to produce all responsive documents, which Plaintiff respectfully requests. Further, as there was *no good faith basis* for the stonewalling refusals to produce as previously asserted by EMS, thus forcing Plaintiff to incur the expenditures of time, resources and money to prepare this Motion and attend the hearing hereon, Plaintiff respectfully requests that it be awarded as sanctions its attorneys fees and related costs and expenses.

Dated: September 15, 2010                Respectfully submitted,

                                        MERIX PHARMACEUTICAL CORPORATION

                                        By:   **/s/ Richard Kirk Cannon**
                                              Richard Kirk Cannon
                                              Law Offices of Cannon & Associates
                                              117 S. Cook St., #361
                                              Barrington, IL 60010-4311
                                              (847) 381-1600

*Attorney for Plaintiff Merix Pharmaceutical Corporation*

**CERTIFICATE OF SERVICE**

I, Richard Kirk Cannon, caused to be served a copy of the foregoing:

REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION
OF DOCUMENTS RESPONSIVE TO
PLAINTIFF'S THIRD SET OF REQUESTS FOR PRODUCTION

by filing same with the Clerk of the Court, using the CM/ECF system which will send electronic notification of such filing to the following counsel of record:

>Lawrence C. Rubin
>Erin K. Lynch
>SHEFSKY & FROELICH LTD.
>111 E. Wacker Drive, Suite 2800
>Chicago, IL 60601
>
>Ronald L. Williams
>Dean R. Batson
>FOX ROTHSCHILD LLP
>Eagleview Corporate Center
>747 Constitution Drive, Suite 100
>P.O. Box 673
>Exton, PA 19341
>
>*Attorneys for EMS Acquisition Corporation*

    **/s/ Richard Kirk Cannon**
    Richard Kirk Cannon